## WHITTY v. WEEDIN, Commissioner of Immigration.

### No. 7024.

Circuit Court of Appeals, Ninth Circuit. Dec. 6, 1933.

Revelle, Revelle & Kells, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd and Jeffrey Heiman, Asst. U. S. Attys., all of Seattle, Wash. (John F. Dunton, of Seattle, Wash., U. S. Immigration Service, on the brief), for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant, Ernest James Whitty, was a native of England, reached manhood and was married there. In 1910 he emigrated to Canada, leaving his wife and children in England. Securing work in Canada, he sent money back to England, from time to time, for their support. He learned, so he testified before the Board, of the continued infidelity of his wife, which he asserted was his reason for leaving England. He married in Canada in 1910, without having secured a divorce from the first wife. He was arrested in Victoria, British Columbia, in May of 1914, convicted of the crime of bigamy and sentenced to one year's imprisonment, of which sentence he served ten months. He claims that shortly after his release from prison he entered the United States, through the port of Seattle, Wash., coming aboard the Canadian Pacific Steamer Princess Adelaide. There was no record found or produced to substantiate this claim. Following this he divorced his first wife and then went through the form of remarriage to his second wife, and later she divorced him. He married again, but at the time deportation proceedings were instituted, he was not living with his wife. He asserts also that he took out his first naturalization papers in 1916 or 1917, which he permitted to lapse. In 1925 he again took out first papers. He claims to have left the United States three times for short visits to Canada, and fixed 1928 as the year of his last entry into the United States, at which time he was not in possession of an unexpired immigration visé.

On November 5, 1931, he applied for registration under the Act of March 2, 1929 (45 Stat. 1512 [see 8 USCA § 106a]). Upon his statements made in connection with the hearing had on the said application a warrant for his arrest was issued March 1, 1932, charging that he was subject to deportation under the provisions of the Immigration Act of May 26, 1924 (43 Stat. 153 [see section 13] of the act [8 USCA § 213]), in that at the time of his last entry he was not in possession of an unexpired immigration visé, and also that he had been found in the United States in violation of the Immigration Act of February 5, 1917 (section 3 [8 USCA § 136]), for the reason that "he has been convicted of, or admits having committed, a felony or other crime, or misdemeanor involving moral turpitude, prior to entry into the United States, to wit: bigamy." Under authority of said warrant he was duly arrested and given a hearing, and upon the evidence adduced a warrant of deportation was issued July 29, 1932.

The alien thereupon petitioned for a writ of habeas corpus and to the return to the show cause order the United States Commissioner of Immigration attached as a part thereof the record of the deportation proceedings against the said petitioner.

In paragraph V of the petition for the writ of habeas corpus, petitioner, among other things, alleged: That with respect to the charge of the commission of a crime involving moral turpitude before his entry, the record shows without dispute the facts as follows: That prior to the petitioner's leaving England in 1910 his wife had been unfaithful to him on a number of occasions. Her conduct was a matter of common knowledge in the community, and was reported to Mr. Whitty by a number of neighbors. That, accordingly, he planned to go to Canada to found a new home away from the surroundings and associations which he believed were responsible for his wife's drunkenness and her infidelity, and it was planned that she should come and bring the children when he had established a home. That with this purpose in view he went to Canada and from time to time sent funds home to his wife for her support and for the support of the children. That she continued her misconduct as before, and in 1913 the petitioner was informed by his brother that she had given birth to two

children in his absence and was living with the man who had fathered the children. That thereafter and prior to his coming to this country he remarried. That the obtaining of a divorce in Canada was very expensive and he had not the funds with which to obtain one from his first wife. That he was tried in Canada before coming to this country for having committed the crime of bigamy and was found guilty.

By section 221 of title 8 USCA, the burden of proof is placed on the alien in deportation cases. Hence it was incumbent upon the alien to show that he was lawfully admitted into the United States. In this he failed.

There was no evidence other than the testimony of petitioner himself concerning the facts surrounding his first entry into this country on the date claimed. True he testified that he had taken all steps required of him prior to his original entry into the United States, which he stated was for the purpose of establishing a permanent residence; that he paid a head tax and had receipt issued to him; that he kept this receipt for many years, but that it was lost some years ago; that he distinctly remembered his arrival, in that it was the evening preceding July 4th of that year. Other witnesses appeared and testified as to his character, but that testimony is not material here, we being now concerned only with his lawful entry. The evidence upon behalf of the government was negative, consisting in the showing that there was no record of any sort of Mr. Whitty's entry into this country on the date when he first claims to have come from Canada, nor any record of his visits to Canada after coming to this country.

On these facts and upon his own admission that he had been convicted of bigamy in Canada prior to his original entry into this country, the writ of habeas corpus was denied.

Section 13 of the Immigration Act of 1924 (43 Stat. 153 [8 USCA § 213]) provides:

"(a) No immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa, * * * and (4) is otherwise admissible under the immigration laws.

"(b) In such classes of cases and under such conditions as may be by regulations prescribed immigrants who have been legally admitted to the United States and who depart therefrom temporarily may be admitted to the United States without being required to obtain an immigration visa."

Section 4 of the same act (8 USCA § 204) provides:

"When used in this subchapter the term 'nonquota immigrant' means—* * *

"(b) An immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad."

Rule 3, subd. F, par. 1, of the Immigration Rules of March 1, 1927, in effect when the appellant returned from his visit to Canada in 1928, provides:

"No immigrant, whether a quota immigrant or non-quota immigrant, of any nationality, shall be admitted to the United States unless such immigrant shall present to the proper Immigration Official, at the port of arrival, an immigration visa, duly issued and authenticated by an American consular officer; Provided, that (2) aliens who have been previously lawfully admitted to the United States and who are returning from a temporary visit of not more than six months to Canada, * * * shall be permitted to enter the United States without an immigration visa."

Section 23 of the Immigration Act of 1924 (8 USCA § 221) provides as follows:

"* * * And in any deportation proceeding against any alien the burden of proof shall be upon such alien to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigration visa, if any, or of other documents concerning such entry, in the custody of the Department of Labor."

The Act of February 20, 1907, as amended (34 Stat. part 1, page 898; 36 Stat. 263; 37 Stat. 736) among other things provided for a head tax to be collected by the master, agent, owner, or consignee of the vessel bringing aliens to the United States. The same act also provides that manifests be furnished of all passengers arriving by steamer.

Subdivision 3 B of rule 12 of the Immigration Rules of November 15, 1911, provides among other things that aliens of the class mentioned shall be denied examination until they present to the examining officers a certificate from a duly appointed agent of the transportation company, and the same rules also provide, in substance, that aliens found admissible by the inspectors or boards situated at the seaports shall be furnished with a certificate of identity prepared on the form provided by the Bureau, signed by the United States Commissioner of Immigration **for**

Canada, and that the same should be presented and surrendered when admission at any of the ports of entry is sought.

As indicated by the evidence, the substance of which we have quoted, no record of the compliance with any of the duties imposed upon appellant under the Immigration Law was found or produced, either through the offices of the Canadian or United States immigration officials, nor from the steamship company, upon a steamer of whose line he is supposed to have entered this country. His testimony as to the manner of his original entry was uncorroborated in any way, and there was a complete absence of any records showing that he had lawfully entered in the manner required by law.

According to section 23 of the Immigration Act of 1924 (8 USCA § 221), supra, the burden was upon the appellant to show his lawful entry. We have examined the cases cited by appellant, concerning situations similar to this, where the alien claimed to have entered this country legally, and where the records of his entry could not be found. The cases principally relied upon are U. S. ex rel. Linklater v. Commissioner (D. C.) 36 F.(2d) 239, and U. S. ex rel. Shore v. Day (D. C.) 36 F.(2d) 264. Both of these cases, decided by the same District Judge, lend support to appellant's contention. However, the case of Shore v. Day, supra, was subsequently reversed by the Circuit Court of Appeals in U. S. ex rel. Shore v. Corsi, 61 F.(2d) 761. Apparently the Linklater Case was not appealed, but as an authority it has been greatly weakened, if not directly overruled by the reversal of the Shore Case. Moreover the Linklater Case, in so far as it is applicable to the facts of the case at bar, also loses some of its weight when we note that the absence of, or failure of the government to produce, the records of the alien's claimed entry in that case, was possibly due to the fact that that case arose during a period when by custom or lack of rules it was not required to make a record of the entry of aliens into this country, as was required at the time appellant herein claims to have entered.

As opposed to the support which either of these two cases may give to appellant's contention are numerous cases, which hold that the decision of the immigration officials is conclusive on matters of fact, Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114; U. S. ex rel. Mantler v. Commissioner (C. C. A.) 3 F.(2d) 234; also cases holding that immigration officials are not bound to believe the testimony of the alien, Wong Fat Shuen v. Nagle, 7 F.(2d) 611 (C. C. A. 9); also U. S. ex rel. Tisi v. Tod, 264 U. S. 131, 44 S. Ct. 260, 68 L. Ed. 590, wherein the Supreme Court of the United States, among other things, said:

" * * * The correctness of the judgment of the lower court is not to be determined by inquiring whether the conclusion drawn by the Secretary of Labor from the evidence was correct, or by deciding whether the evidence was such that, if introduced in a court of law, it would be held legally sufficient to prove the fact found."

The point to be determined by us is whether the appellant had a fair hearing, and, if it appears from the record that he had, we are not at liberty to disturb the decision of the lower court. The truth of the facts is for the determination of the immigration tribunals, and where its procedure and decision are not arbitrary or unreasonable, and the alien has had a fair hearing, the result must be accepted. Flynn ex rel. Chin Tai Sing v. Tillinghast, 35 F.(2d) 347 (C. C. A. 1); U. S. ex rel. Shore v. Corsi (C. C. A.) 61 F.(2d) 761, supra.

We therefore conclude that the decision of the lower court on the question of the alien's entry into this country must be affirmed as correct.

[4] Upon the other question presented as to whether or not the crime of bigamy, admitted to have been committed by appellant in Canada before coming to this country, and for which he served a term of imprisonment, was such a crime as involved moral turpitude, the cases cited by appellant, claiming to indicate that under certain conditions a crime of bigamy might not involve moral turpitude, do not support his position. The crime of bigamy involved moral turpitude.

"It is the conduct of the defendant in marrying the second time which constitutes the crime and it is the abuse of this formal and solemn contract which the law forbids because of its outrage on public decency." 3 R. C. L. 804.

By the law of Canada bigamy is declared a crime and its serious nature is revealed by the provision for punishment attached to conviction by imprisonment in the penitentiary for a term of seven years. It is no less a crime in this country, as was well said by Mr. Justice Field:

"Bigamy and polygamy are crimes by the laws of all civilized and Christian countries. They are crimes by the laws of the United States. * * * They tend to destroy the

purity of the marriage relation, to disturb the peace of families, to degrade woman, and to debase man. Few crimes are more pernicious to the best interests of society, and receive more general or more deserved punishment." Davis v. Beason, 133 U. S. 333, 341, 10 S. Ct. 299, 300, 33 L. Ed. 637.

The order under review is affirmed.