## SHEE v. HAFF, District Director of Immigration, etc.
### No. 8568.

Circuit Court of Appeals, Ninth Circuit.

Jan. 24, 1938.

C. C. Wing, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and Robert L. McWilliams, Asst. U. S. Atty., both of San Francisco, Cal. (Arthur J. Phelan, U. S. Immigration and Naturalization Service, of San Francisco, Cal., on the brief), for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant was ordered deported from the United States upon the ground that she had been found to be "receiving, sharing in, or deriving benefit from the earnings of a prostitute, and that she had been found assisting a prostitute." She petitioned for a writ of habeas corpus; order to show cause issued and, after hearing on return thereof, the petition for the writ was denied; and petitioner appeals.

There are eight assignments of error but actually only one question: Whether the court erred in denying the petition for writ of habeas corpus. The argument of appellant may be divided into two points: (1) The statute under which the appellant was ordered deported provides for a five-year period of limitations, after which the alien may not be deported thereunder, and that the appellant has resided in the United States continuously since 1909; and (2) there was insufficient evidence and the hearing was unfair.

The appellant entered the United States at San Francisco in 1909 as the wife of a

native of the United States. She was born in China 23 years before and was of the Chinese race.

On February 5, 1935, she was indicted, along with seven other Chinese, charged with conspiracy to import an alien woman into the United States for the purpose of prostitution, and with keeping, maintaining, etc., such woman for the purpose of prostitution. The appellant and three others were found guilty and she was sentenced on May 3, 1935, to be imprisoned for the term of one year and one day. February 21, 1936, she was released from the Federal Industrial Institution for Women at Alderson, West Virginia, and taken into custody May 3, 1936, under United States Department of Labor warrant dated March 8, 1935, which charged her with "receiving, sharing in or deriving benefit from the earnings of a prostitute and that she has been found assisting a prostitute." After hearings she was ordered deported, whereupon she sought release on habeas corpus.

The ground for deportation rests upon the testimony of two Chinese girls, Jeung Ying and Quan Gow Sheung.

Jeung Ying, a Chinese "slave" girl, had entered a rescue mission on the outskirts of San Francisco's Chinatown. Statements were taken from her by immigration authorities in which she said that she had been brought to the United States through the Port of Seattle, Washington, as the daughter of a native; that this was not true, as her own father had never been to the United States and had died in China some time before and she had been coached in the story she was to tell; that she was met in Seattle by her alleged father and alleged sister; that she had been taken from Seattle to San Francisco by a man and woman; that a man who met her at the Oakland Mole at the conclusion of her trip from Seattle took her to an apartment in San Francisco where she stayed while he was making arrangements to sell her; that she was bought by Jew Gwai Ha and Yee Mar (Louie Shee, appellant) and taken to their apartment; that she was told she would have to become a prostitute; that she was taken to a feast where she stayed that night with a man and Yee Mar called for her in the morning; that she gave the money she earned to Jew Gwai Ha, keeping a small portion for herself; that arrangements were made for her to receive men each night and for her to give her owners $21 each day; that Jew Gwai Ha and Yee Mar made appointments for her to commit acts of prostitution at various hotels; that she paid the money to Jew Gwai Ha, and on two occasions to Yee Mar; that after 16 or 17 days of this life she fled to the rescue mission.

Quan Gow Sheung, the other Chinese "slave" girl, said that she came to the United States in 1927 as the daughter of a native, although her real mother and father had never been in the United States; that she entered through the port of Seattle and was brought to San Francisco to Yee Mar's home when she was forced into prostitution by four of her owners, Yee Mar, Sheck Mo, Goo Goo Young, and Jin Yow; that Yee Mar sold her share in the witness to a Los Angeles woman, who bought out the other owners and took her to Los Angeles; that she never turned over any money to Yee Mar personally, but to Sheck Mo, who informed her that part of it belonged to Yee Mar; that Yee Mar had acknowledged to the witness that she was a part owner of her.

Another witness to appear was Tien Fuh Wu, a Chinese associate welfare worker at the rescue mission, who testified that three years before she had taken two "slave" girls to Yee Mar's home for the purpose of regaining for one of the girls, called Yoke Lan, $300 that Yee Mar had taken from the girl the night before; that for several years she understood and believed Yee Mar to be a "slave" owner.

The above testimony was all taken at the Chinese Presbyterian Mission in San Francisco, conducted by a Miss Donaldina Cameron. Some months later a hearing was held at the office of the Immigration and Naturalization Service in San Francisco, at which each of three witnesses appeared and was examined or cross-examined by the alien's counsel.

Jeung Ying, so far as concerned the appellant here, told essentially the same story as she did in the examination at the mission. Counsel for the appellant encountered some difficulty in his examination of the witness Tien Fuh Wu, asking the inspector on a number of occasions to strike portions of her answers as not responsive, etc. Miss Wu refused to give the names of persons from whom she secured information as to the reputation of the appellant, other than reformed "slave" girls. Quan Gow Sheung was also produced as a witness and was examined by appellant's counsel. Her testimony was largely the

338

same as originally given, except that she avoided answering direct questions relative to her practicing prostitution, saying, "If it will shorten the hearing I will admit that I was." The attorney persisted along this line of questioning, with the witness refusing to answer questions of that nature. At the conclusion of the witness' examination, counsel asked that her entire testimony be stricken "on the ground that the witness failed to be cross-examined upon vital issues concerning the alien's rights."

At a later date the appellant was examined and denied knowing Jeung Ying, denied having been at a certain apartment as testified to by Jeung Ying, denied having harbored the girl or taken her from one place to another for the purpose of prostitution or having received any money from her. She said that she heard Jeung Ying testify in court and that the testimony was untrue. The appellant also denied knowing Quan Gow Sheung. She said, further, that on one occasion Miss Wu called at her home with a woman named Wook Lon (Yoke Lan) to whom Louie Shee had loaned money and from whom she had just received payment; that Wook Lon appeared with Miss Wu and police officers and demanded return of the money; that the witness was frightened and returned the money to Wook Lon. Her counsel then resumed questioning relative to Quan Gow Sheung, and the witness stated that she did not know the girl or anything about her.

The clause of the statute under which the appellant was ordered deported does not have an express time limit defining the period after the expiration of which an alien may not be deported for the commission of the acts set forth therein. Section 155 of title 8, U.S.C.A. (39 Stat. 889), reads in part as follows: "Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or

where prostitutes gather, or who in any way assists any prostitute or protects or promises to protect from arrest any prostitute; any alien who shall import or attempt to import any person for the purpose of prostitution or for any other immoral purpose; * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." Other clauses contain the words, "At any time within five years after entry"; "at any time within three years after entry"; "at any time after entry."

This court held in McLeod v. Nagle, 9 Cir., 48 F.2d 189, that the initial phrase of the statute, "within five years after entry," was inapplicable to subsequent clauses separated therefrom by a semicolon. We there said: "If no time limit is expressed, then the section must be interpreted to mean 'at any time after the entry of the alien into the United States.'" The Supreme Court has so held. Costanzo v. Tillinghast, 287 U.S. 341, 53 S.Ct. 152, 77 L.Ed. 350.

On the question of fairness of the hearing and sufficiency of the evidence, we are confronted with the familiar problem which has been before this court for years in this type of case. The law has become so well defined as to hardly need citation of authority. See Whitty v. Weedin, 9 Cir., 68 F.2d 127, 130, where we said: "The truth of the facts is for the determination of the immigration tribunals, and where its procedure and decision are not arbitrary or unreasonable, and the alien has had a fair hearing, the result must be accepted."

There was introduced into the department record a copy of the indictment charging the appellant with conspiracy to import an alien woman for the purpose of prostitution, etc., and the judgment of conviction thereunder. At least one of the witnesses before the Board, Jeung Ying, appeared as a witness in that case. We think that the record fails to show that either the procedure or the decision in the instant case was arbitrary or unreasonable. Appellant has had a fair hearing and there was evidence to sustain the action of the Department of Labor in ordering deportation.

Affirmed.