**SINGH v. DISTRICT DIRECTOR OF IMMIGRATION AT SAN FRANCISCO.**

**No. 8720.**

Circuit Court of Appeals, Ninth Circuit.

May 18, 1938.

Marshall B. Woodworth, of San Francisco, Cal. (S. Luke Howe, of Sacramento, Cal., of counsel), for appellant.

Frank J. Hennessy, U. S. Atty., R. B. McMillan and A. J. Zirpoli, Assts. U. S. Attys., all of San Francisco, Cal. (A. J. Phelan, U. S. Immigration & Naturalization Service, of San Francisco, Cal., on the brief), for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This appeal is from an order of the District Court of the United States for the Northern District of California denying appellant's petition for a writ of habeas corpus. Appellant is held on a warrant directing his deportation to India under the Immigration Act of 1924 approved May 26, 1924 and effective July 1, 1924 (chapter 190, § 14, 43 Stat. 162, 8 U.S.C.A. § 214). We use the term appellant and "the alien" interchangeably herein.

The immigration authorities claim that appellant illegally entered the United States from the Republic of Mexico since July 1st, 1924, and that therefore by the terms of the statute above cited, he should be deported.

A hearing was had before Inspector Chas. F. Mitchell of the Immigration and Naturalization Service of the United States Department of Labor at Marysville, California, beginning January 7th, 1936, and was adjourned to San Francisco, California, where several adjourned meetings were held. Upon the evidence taken at such hearings, the warrant of deportation was issued. Appellant and his counsel were present at each session of the hearing.

Before the taking of any testimony the Inspector advised the appellant as follows:

"You are advised that the burden of proof is upon you to show that you entered the United States lawfully, and the time, place, and manner of your entry; but in presenting such proof you are entitled to the production of your immigration visa, if any, or other documents pertaining to your entry now in the custody of the Department of Labor at Washington, D. C. Do you understand?"

Appellant answered "Yes." (This court stated in Ex parte Keizo Kamiyama, 44 F. 2d 503, that the burden of establishing continuous residence in the United States from 1924 (July 1st) onward is upon the alien.)

Inspector Mitchell had theretofore taken statements from appellant and the first evidence taken at the hearing was the introduction of the transcript of appellant's previous statements together with a report by Inspector Mitchell to his superiors.

The alien was then examined minutely as to the correctness of his statement made to the Inspector on the 25th of October, 1935.

Counsel in their brief contend that the alien was in a drunken stupor when the statement of October 25th, 1935 was taken. There is no evidence supporting this assertion. The evidence does show that the alien was required to leave his bed after dark in order to give the statement and that he had been drinking.

It appears from the statement upon which appellant was being examined that he therein claimed to have left India, at the age of 22 years, in 1913, and entered the United States June 29th (landed July 4th) of the same year through the port of Seattle, Washington, after having transferred at Vancouver from the steamer "Anyo Maru" to a C.P.R. boat for Seattle. That he had gone from Calcutta to Kobe, Japan on the S. S. "Tanda" of McKenzie Company, where he had taken ship for the United States.

At the hearing the alien said the statement was erroneous, that he had not gone to Kobe, Japan, but had gone from Calcutta to Philippine Islands on the "Tanda" thence took the ship "Minnesota" from Manila to Seattle.

Thereafter the Inspector examined him as to the correctness of the statement as to his whereabouts after the date of the entry and as to any papers or any writing that would corroborate his testimony. He furnished no such corroborating testimony, claiming that everything had been stolen from him. There were discrepancies between the statement and his testimony at the hearing. He said he had gone to register in the draft of 1917 but was told he needed no card. Later he produced a Greek, named Peter de La Porte, as a witness who testified that he had employed two Hindus to prune his grape vines in 1932. That "this man (the alien) looks like one of them." He could not be positive. He next saw him in 1933. No mention of employment by this man was made in alien's statement of October 25th, 1935.

Appellant also produced two other witnesses named respectively Indar Singh and Chajja Singh each of whom corroborated some of the statements made by the alien as to his whereabouts. Indar Singh testified he had met the alien at the San Francisco Exposition in 1915.

Besides two affidavits of Mexican police officers, to which we shall hereinafter specifically refer, the government introduced the following: A letter from the Immigration Service to the District Director of Immigration and Naturalization Service at Seattle, asking verification of the passenger list on the "Minnesota" arriving there July 4th, 1913, and the "Clerk in Charge Statistical Division" replied on the same letter of inquiry "Entry as claimed cannot be verified."

A letter from the Assistant Collector of Customs at San Francisco stated that the passenger list of the S. S. Anyo Maru, arriving at San Francisco, May 31, 1924, shows name of "Naranjan Singh age 22 yrs., male, single embarked at Kobe, Japan with two pieces of baggage, destined to Manzanillo, Mexico."

A photograph of Naranjan Singh, the alien.

A letter from the American Consul at Karachi, India, stating that an inquiry through the local Indian government as to when alien left his native village elicited the response that this occurred toward the end of 1918 or early 1919.

The alien introduced two Exhibits: A notice of lien, dated December 23, 1922, by Indar Singh against Worden and against Rosenberg Bros., for whom alien claimed he had worked; and an affidavit by alien's two brothers in India stating alien left home

about December 1912 to go on to the United States. That they had heard from him from California and had received money from him in 1913—1924 and 1925. This affidavit was prepared in San Francisco in English and sent to India where it was subscribed by signatures and finger prints before a Magistrate of the First Class and returned without change.

The hearing was adjourned from time to time, the convenience of the alien was considered and the proceeding appears to have been conducted in admirable fairness.

An important question for decision in this proceeding arises from the introduction into evidence of the sworn statements by the Mexican officers.

One of these statements was from a police sergeant at Mexicali, B. C., Mexico, to the effect that he identified a photograph of appellant as that of a man whom he had known near Tecolote and Cuervas, B. C., Mexico in 1925; and one was from a police officer and ranch labor foreman near Cuervas, B. C., Mexico to the effect that he also identified a photograph of appellant as that of a man he had known around Cuervas, Tecolote, and Paredones, B. C., Mexico, from 1925 to about 1927.

■ No objection was made to the introduction of those statements, but appellant, through his counsel, asserts the right to cross examine the affiants and claims that because they were not brought to San Francisco at the hearing for such cross examination he was deprived of this right. Assuming without deciding that he had the right to the cross examination claimed (see Kishan Singh v. District Director of Immigration, 9 Cir., 83 F.2d 95) we do not find this right was denied appellant. The presiding officer at the hearing stated that these police officers would be produced at Mexicali, California, for cross examination at the pleasure of appellant, but appellant said he did not care to spend the money to go there. His counsel stated that appellant had given him the information that he did not have the money to go himself and pay for counsel to go. But the cross examination could have been accomplished by deposition.

■ Deportation proceedings are civil in nature and the alien need not be confronted by witnesses. Berkman v. Tillinghast, 1 Cir., 58 F.2d 621. Upon the point just discussed, the instant case is so nearly the case of Kishan Singh v. District Director of Immigration, supra, decided by this court, that we deem it unprofitable to here go into greater detail. See, also, Wong Back Sue v. Connell, 9 Cir., 233 F. 659.

■ It is appellant's contention that there was a lack of substantial evidence had at the hearing and that together with his claimed denial of the right to cross examine the Mexican officers that the whole hearing was unfair and did not constitute due process of law. We quote from Berkman v. Tillinghast, supra (page 622):

"As has often been said immigration tribunals are not bound by the rules of evidence which obtain in judicial proceedings. They are free, within reason and fairness, to follow their own views as to what has probative value on the issue presented. Johnson v. Keck Shing, 3 F.2d 889, C.C.A. 1. It is not the function of the courts to examine particular steps and rulings in such proceedings; but only to determine whether the proceedings as a whole meet the requirements of due process of law. 'Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial.' Stone, J., Vajtauer v. Commissioner, 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560."

Also, see, Kumaki Koga et al. v. Berkshire, 9 Cir., 75 F.2d 820; Whitty v. Weedin, 9 Cir., 68 F.2d 127.

■ Measured by these rules we think the alien had a fair and impartial hearing and that there is substantial evidence supporting the order of deportation.

Affirmed.