**MONJI UYEMURA v. CARR, District Director, United States Immigration Service.**

No. 8717.

Circuit Court of Appeals, Ninth Circuit.

Oct. 18, 1938.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.

Ben Harrison, U. S. Atty., and Francis C. Whelan and Maurice Norcop, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from an order of the District Court discharging a writ of habeas corpus and remanding appellant to the custody of the Immigration Authorities for deportation.

On August 1, 1936, appellant was arrested under a warrant issued July 31, 1936, by an Assistant to the Secretary of Labor which charged: (1) That he is in the United States in violation of the Immigration Act of 1924, in that at the time of his entry he was not in possession of an unexpired immigration visa (8 U.S.C.A. § 213(a); and, (2) that he is in the United States in violation of the Immigration Act of 1924, in that he is an alien ineligible to citizenship, not exempted by paragraph (c) section 13 thereof (8 U.S.C.A. § 213(c).

The warrant of arrest was based upon information that appellant, an alien and a subject of Japan who had originally illegally entered the United States sometime prior to 1924, had returned to Japan in the year 1928 or 1929 and again illegally entered the United States at an unknown Mexican border port sometime subsequent to August 5, 1930, having passed in transit through the port of San Pedro, California, August 4, 1930, on the SS Bokuyo Maru destined for Mexico.

After a hearing before the Immigration Inspector and a review of all the proceedings by the Board of Review, the Assistant Secretary of Labor, upon recommendation of the Board, issued his warrant for the deportation of appellant to Japan. Appellant thereupon filed his petition for a writ of habeas corpus in the United States District Court. Upon issuance of the writ and return by appellee, the cause was submitted on briefs. On September 15, 1937, the Court entered its order with the above noted result. From this order the present appeal is taken.

Appellant presents two specifications of error for our consideration, namely: (1) The Court erred in holding and deciding that there was material testimony in support of the warrant of deportation in that all the evidence adduced against appellant demonstrated that he had resided continuously in the United States since prior to July 1, 1924; and, (2) the Court erred in holding and deciding that appellant had been given a fair hearing.

Appellant admits that he entered the United States illegally and that at the time of his entry he was not in possession of an immigration visa. He contends, however, that as his entry occurred in 1919, and because he has resided continuously in the United States subsequent to that date, action for his deportation is barred by the five year limitation period contained in the Immigration Act of 1917, § 19 (8 U.S.C.A. § 155); that on the issue raised in this case the burden of proof is not upon appellant to show a legal admission at any time, but upon the government to show appellant made a departure and a subsequent illegal entry, and that here there is a complete failure on the part of the government to sustain this burden.

This argument erroneously assumes that the burden of proof is on the appellee. Actually it is upon appellant. By Section 23 of the Immigration Act of 1924 (8 U.S.C.A. § 221), in any deportation proceeding the burden of proof is placed on the alien " * * * to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States * * *." Taranto v. Haff, 9 Cir., 88 F.2d 85, 86; Whitty v. Weedin, 9 Cir., 68 F.2d 127, 130; Masamichi Ikeda v. Burnett, 9 Cir., 68 F.2d 276, 277. Appellant has failed to sustain this burden.

At the hearing before the Immigration Inspector appellant testified that he was born at Ei-son(mura), Ibusuki-gun, Kagoshima-ken, Japan, on January 7, 1894; that he was married in 1909 or 1910 and has two daughters; that he left Yokohama, Japan, for Callao, Peru, in 1918, arriving in South America several months later; that he remained in South America a short time and then proceeded to Mexico

remaining there about one year after which time he entered the United States; that he entered the United States near Calexico, California, from Mexico, without inspection in the year 1919. He further testified that when he left Japan in 1918 he had in his possession a "Koseki Tohon" (Japanese Census Register Record, issued by the Japanese Government, which names the various members of appellant's family), but that he had lost it several years ago; that he had never had another issued to him.

However, at the. time of appellant's arrest there was found in his possession a copy of a Japanese Census Register Record which was introduced as an exhibit at the hearing. When appellant was interrogated as to this document he admitted that it was his; that it related to his family and was the same one that he had taken with him from Japan in 1918. This record, admittedly an official publication of the Japanese Government, shows without dispute that it was issued on November 24, 1923. Therefore, according to appellant's testimony that he had it with him when he departed from Japan obviously he could not have left Japan in 1918 as he testified, but after November 24, 1923, the date of the issuance of this record. This document further shows that appellant was married in 1917 and not in 1909 or 1910 as he testified.

In view of these discrepancies, and numerous others which we have not mentioned, the Board was justified in rejecting appellant's testimony to the effect that he had continuously resided in the United States since 1919. We agree with the Board when it says, "It is thus apparent that full credence cannot be placed in the alien's testimony."

█ There was also offered in evidence Exhibit "C", which is an official record of the arrival at the Port of San Pedro, California, August 4, 1930, on the Japanese SS Bokuyo Maru, of an alien, one Monji Uemura,* as an in transit passenger destined for Mexico. This record shows that the in transit passenger was a citizen of Japan whose place of birth was Kagoshima, Japan; that his age was 36 years and 6 months and the name and residence of his father was Z. Uemura,* Ibusaki,

Kagoshima, Japan. Appellant testified that he was born at Kagoshima-ken, Japan; that his date of birth was January 7, 1894, which would place his age at 36 years and 6 months on August 4, 1930; that his father's name was Zentaro Uyemura and his place of residence was Ibusuki, Kagoshima, Japan. Many other similarities as to family relationship and physical appearance exist. The government claims the parties are identical. Appellant claims that he is not the same person and in an effort to support this assertion produced 47 stamped envelopes addressed to him bearing postmarks of various dates from 1922 to 1935, which envelopes, he asserts, establish his continued residence in this country. The most pertinent of these envelopes is one addressed to appellant at Long Beach, California, bearing the postmark date of January 6, 1930. Another shows the postmark date of September 22, 1930. No envelopes were produced by appellant for the period between these two dates. As it is not known just when appellant left the United States, it would have been entirely possible for him to have received a letter on January 6, 1930, departed from the United States, visited Japan and still have been the in transit passenger on the SS Bokuyo Maru arriving at the port of San Pedro on August 4, 1930. It is evident, therefore, that these letters relied upon so strongly by appellant to support his assertion that he was not the in transit passenger while proper evidence, are not conclusive.

Appellant further testified at the hearing that he had not seen his second daughter since his departure from Japan in 1918 and that at that time she was about 2 months old. The government introduced in evidence a letter from this daughter dated December 19, 1935, a translation of which reads in part as follows: " * * * It is now almost Showa 11th (1936). Since you went to America, it has elapsed [torn out] years. At the time you left home, you told us that you are coming home from America within 5 years. Are you not prepared to return yet? * * *"

It would seem to go beyond mere coincidence that this letter should have a part torn out of it just at the place where it would have revealed how long the alien

---

* Appellant was asked on the hearing, "Is your family name spelled in English letters 'Uyemura' as well as 'Uemura'?" He replied "Yes, 'Uyemura' is the correct way to spell it in English letters."

had been absent from Japan on December 19, 1935. Also, if as the appellant testified, he has not seen his daughter since his departure from Japan in 1918, it is not likely that she would have waited 18 years to remind him that he had promised to return in five years.

We are of the opinion that the finding of the Board, that: "Because of the accuracy with which the record of the transit passenger describes the subject alien, the Board of Review is constrained to find, in the light of all the evidence contained in the record, that the alien's last arrival in the United States was subsequent to August 5, 1930, and therefore that the charges are sustained", being supported by sufficient evidence is conclusive upon this court. Keitaro Karamoto v. Burnett, 9 Cir., 68 F.2d 278.

There appeared as a witness in behalf of appellant, one Yasuhei Nishioka, who testified that he had known appellant for the past eleven years and had seen him frequently during all of this time; that he had employed appellant during part of the years 1927, 1928, 1929 and 1930, when appellant went to the Imperial Valley. This witness was asked, "Have you any account or time books which would corroborate your statements as to his employment with you?" He replied, "No, because I cannot write Japanese, for that reason I don't keep a record."

Under the circumstances we do not believe that the Board acted arbitrarily in disregarding this unsubstantiated testimony of the witness. In any event, " * * * The weight of the evidence and the credibility of witnesses is not for us, but for the Board." Mui Sam Hun v. United States, 9 Cir., 78 F.2d 612, 615.

This brings us to appellant's second contention that the hearing was unfair. In support thereof appellant asserts that the government's finding that he was identical with the in transit passenger passing through the port of San Pedro to Mexico in 1930, being based on discrepancies or weaknesses in the testimony or the evidence offered by appellant, is an arbitrary conclusion and therefore, unfair.

With this contention of appellant we do not agree. As above mentioned, it is incumbent upon appellant to prove his case, and where an alien presents testimony replete with discrepancies and evidence which does not support his case, the Board is justified in disregarding such testimony and concluding that he has not sustained the burden imposed upon him by the statute and therefore should be deported. It is immaterial that, upon the evidence presented, we might not agree with the conclusion reached, for the law is well settled that: " * * * the correctness of the judgment of the lower court is not to be determined by enquiring whether the conclusion drawn by the Secretary of Labor from the evidence was correct, or by deciding whether the evidence was such that, if introduced in a court of law, it would be held legally sufficient to prove the fact found."

U. S. ex rel. Tisi v. Tod, 264 U.S. 131, 133, 44 S.Ct. 260, 68 L.Ed. 590. As we said in Whitty v. Weedin, 9 Cir., 68 F.2d 127, 130: "The point to be determined by us is whether the appellant had a fair hearing, and, if it appears from the record that he had, we are not at liberty to disturb the decision of the lower court. The truth of the facts is for the determination of the immigration tribunals, and where its procedure and decision are not arbitrary or unreasonable, and the alien has had a fair hearing, the result must be accepted."

In no other regard does appellant claim that the hearing was unfair or the action of the Board arbitrary or capricious. We have carefully examined the record and it fails to show that the proceedings were unfair, or were conducted in an improper manner, or that there was any abuse of discretion or any denial of appellant's right to due process of law. We are of opinion that appellant has had a fair hearing, and as there was sufficient evidence to sustain the finding of the Board the order of the District Court is affirmed.