## ALI v. HAFF.
### No. 9439.

Circuit Court of Appeals, Ninth Circuit.

Sept. 11, 1940.

Marshall B. Woodworth, of San Francisco, Cal., and S. Luke Howe, of Sacramento, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and A. J. Zirpoli, Asst. U. S. Attys., all of San Francisco, Cal. (A. J. Phelan, U. S. Immigration & Naturalization Service, of San Francisco, Cal., on the brief), for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

On this appeal from an order of the court below denying a petition for writ of habeas corpus, prayed for by the appellant upon the ground that he was illegally deprived of his liberty by the appellee who

threatens to deport him under authority of a warrant of the Secretary of Labor, the question is whether there is any substantial evidence to support the action of the administrative officers of the Department of Labor. The appellant confines the question to "whether there is any substantial evidence to sustain the conclusion of the Immigration Officials that the photograph of the Mexican Hindu, Harma Singh or Hazura Singh, is that of the appellant."

Rahmat Ali, a native of Krepor, Jallundur, India, was first arrested in 1932 and charged with being an alien ineligible to citizenship, and in the United States in violation of the Immigration Act of 1924, 8 U.S.C.A. § 213(a) and (c), and not exempted by paragraph (c), Section 13, thereof. At this time, the alien said he was born in 1889 and came to the United States in 1911; that he did not remember the name of the boat; that he could not read or write in his own language (he did not understand any English); that he was married; that his wife's name was Karmat and she resided in India. He said at that time that he was unable to furnish the name of anyone who knew him in the United States prior to July, 1924, and that he had no documents of any kind to show he had been in the United States prior to that date—"All my papers burned up."

An investigation was conducted, relative to the claims of the alien, which revealed that one Rahmat Alli, a native of Jalander, India, was admitted into the United States at the port of San Francisco, August 5, 1910, ex S.S. Mongolia. The records further indicated that the person to whom they referred was 24 years of age, could read and write, was 5 feet 3 inches tall, married, had a small scar outer left cheek, and his nearest relative or friend was one Booray Khan of Karish, Jalander. Hearings were held and affidavits taken and presented. The appellant was 21 years of age in 1910, could not read or write, was 5 feet 5¾ inches tall, and denied he knew a Booray Khan of Karish, Jalander, or where the village was located, but did have a scar on his left cheek.

Four residents of the Mexicali district, Baja California, Mexico, selected the photograph of Rahmat Ali out of large group of other photographs and told an immigrant inspector they knew the person as one who had lived in Mexico. One of these witnesses placed the time at 1926, another, 1924 and 1925, a third said it was in 1929 or 1930 that he knew Rahmat Ali, and the fourth, 1925 or 1926. This latter witness, when shown a group of 72 photographs and asked whether he was able to make an identification, selected one and said, "Yes, that is Rahmat Ali. He was about the only one we ever had who did not have the family name of 'Singh.' He worked on the Les Dow Ranch under me for about 8 or 10 months in 1925 or 1926."

At the instance of the Department of Labor, the State Department conducted an investigation in India, through the American Consul in the district, who reported that one Rahmat Ali, a resident of Karimpur in the Nawashahr Tahsil of the Jullundur District, left India 7 or 8 years before (the consul's letter was dated March 30, 1933) for Cuba.

The alien presented several exhibits, the first of which included an envelope addressed to him at Isleton, Calif., postmarked, "Langroya, Jullundur, 26 Aug 32," and two receipts for money orders forwarded to India, each dated November 14, 1932. Two affidavits related to the correct spelling of the name. There were also three checks made payable to Rahmat Ali, and one to another person of his race. One of the checks was dated October 10, 1929, another December 26, 1929 (this was in favor of another Hindu, but a translation of certain writing thereon indicated it was "for" Rahmat Ali), another was dated June 14, 1923, and the last June 30, 1923. No one of the checks was personally endorsed by the alien, but by a third person, although three of the checks bore a small mark, which could have been made by the appellant. The marks, however, were not identical, or even similar. There were also two affidavits taken in India, one purporting to be given by appellant's wife and the other by his brother. The affidavits were quite similar, stating that Rahmat Ali left India for the United States in 1910; that statements made that he left India seven years prior to the date of the affidavit were false; that he had not been in India at any time since 1910. In each affidavit the numerals "1910" appear three times and in every instance there has been an erasure; plainly apparent beneath the figures "1910" in at least four places are the figures "1922," which were incompletely erased, and in the face of the photograph of Rahmat Ali attached to each affidavit are the figures "1910" clearly impressed, which indicates that the numerals

were inserted after the affidavit was made up and, perhaps, completed.

The alien also presented an affidavit of one W. J. Phelps, who had been in the employ of Golden State Asparagus Company at or near Isleton, California, from 1911 to 1917, and from 1923 to 1930. Phelps averred that Rahmat Ali had been employed by his company at various times from 1923 to 1930 and that he also believed the alien was employed by his company during the period 1911 to 1917.

At the hearing, the alien testified that he resided in the United States continuously since 1911 and that he worked at different ranches and farms in California during the period; that he had a bank account for two years preceding the examination, but not prior thereto. A fellow Hindu, Roshen Ali, also testified in his behalf, saying that the first time he met the detained was in 1917, when Rahmat Ali worked for him; that he saw him again in 1918 and 1922, but not between 1922 and 1932, at which latter time Rahmat Ali again worked for him. Mahndi Khan testified that he first met Rahmat Ali in 1920; that they were partners in a rice company; and that the detained worked for him every year up to 1927; that he had no written evidence of this.

■ At a subsequent hearing, the alien said he did not know the whereabouts of Roshen Ali, and that Mahndi Khan was dead. He denied having been in Mexico at any time and said he did not know any of the affiants. The interpreter said he knew the alien in 1929 and 1930 at Isleton, California. At this time, the checks, to which we have heretofore referred, were introduced in evidence and Rahmat Ali said they were all given him by the maker, Fateh Mohammed, for work done and that Fateh Mohammed endorsed them for him and cashed them. Immediately thereafter he said he did not know if Fateh Mohammed actually wrote his name on the back of the checks, or whether it was someone else. He said he received the money from the checks and kept them in his possession ever since. (It is judicially noticed that checks pass through a bank for payment and cancellation, and are then returned to the maker; how the checks in evidence came into the possession of the payee is not explained.) Questioned further by the inspector, the alien said he put a mark on the checks, but did not remember who endorsed them; further, "Fateh

Mohammed must have had someone else sign them and cash for me." The alien's counsel advised the examining officer that Fateh Mohammed had left the United States for India about a year previously. Advised by the examining officer that the Mexican affiants would be available at Calexico, Calif., for cross-examination, the alien and his counsel stated they desired to conduct such examination, but were prevented from doing so because of lack of funds.

The examining officer .recommended deportation, based upon a summary of the evidence, which he believed proved the alien entered the United States subsequently to July 1, 1924, during the year 1929, without inspection, at an unknown port on the Mexican border. Thereafter, on July 7, 1935, the Board of Review recommended the proceedings be cancelled, upon the ground that the record of arrival of 1910 was reasonably identified with the alien.

In the latter part of 1935 or early part of 1936, there came into the possession of the Immigration authorities a photograph of an East Indian named Harma Singh or Hazura Singh, who had been arrested in Mexicali, Baja California, Mexico, on September 18, 1928, for illegal entry into that district of Mexico. This photograph was believed to be that of Rahmat Ali. Four peace officers, each a criminal identification expert, were asked to compare known photographs of Rahmat Ali with the photograph of the East Indian who was arrested in Mexico, and each was of opinion that the photographs were of the same person. It was also discovered that on May 5, 1925, ex S.S. Sutlej, one Rahmat Ali, aged 30 years, arrived at Santiago de Cuba from Punjab, India. No further information could be obtained from Cuba relating to the arrival of East Indians on that vessel at that time.

April 3, 1936, a warrant of arrest, based upon these new facts, was issued, and the alien was apprehended in Sacramento, Calif., December 14, 1937. Thereafter, a hearing was had, at which the alien denied being in Mexico and declared the Mexican picture was not of him. Both Mr. Phelps and Roshen Ali, who appeared in behalf of the alien at the first hearing, testified. Mr. Phelps said that to the best of his recollection, Rahmat Ali worked for him in 1923, 1924, 1925, 1926, 1927 and 1928, but he was not positive—that he could be mistaken as to some of the years; that his identifica-

tion of the alien was positive; that he had no written records, having burned the time cards, etc., in 1932, because there was no further use for them. When shown the Mexican photograph, he said he did not think it was of Rahmat Ali. Roshen Ali testified that he first met the appellant in 1916, but the latter had not worked for him since 1922, and the witness had no records to show that Rahmat Ali had worked for him, because his records were burned in a fire in 1922.

Two professional photographers appeared as witnesses for the alien. They gave as their opinions that the Mexican photograph was not of Rahmat Ali; that the acknowledged or admitted photographs and the Mexican photograph were not those of the same person; that the Mexican photograph was out of focus, etc., and, therefore, of little value for purposes of comparison. Each of these witnesses had also made personal inspection of Rahmat Ali's features and advanced various reasons for their individual opinions.

The alien called one Nur Mohammed, treasurer of the Muslin Association, who said he first met Rahmat Ali in September, 1928, at Isleton, California, where appellant was working for the Golden State Asparagus Company, and saw him frequently thereafter, "sometimes every month or sometimes every two months." He did not produce any written evidence of these facts, nor did he offer any receipt books as proof of having made any collections of dues for the Association from Rahmat Ali, if the latter was a member of said Association.

The examining inspector concluded his summary of the evidence taken at the hearings with the recommendation that the alien be deported, and he was sustained by the Board of Review. The alien was ordered deported to India; he petitioned the court below for a writ of habeas corpus, which was denied, and this appeal followed.

■ It is provided in 8 U.S.C.A. § 213 (a) and (c) that no immigrant shall be admitted into the United States unless he has an unexpired immigration visa and, if the alien is not eligible to citizenship, he shall not be admitted save under certain circumstances set forth in 8 U.S.C.A. § 204, or under 8 U.S.C.A. § 203. It is not contended that the alien is admissible under these provisions. By subdivision "(n) of 8 U.S.C.A. § 136, it is provided that

natives of certain sections of Asia shall be excluded from admission into the United States. Among those excluded, both from admission and from citizenship, are natives of any part of India. United States v. Bhagat Singh Thind, 261 U.S. 204, 215, 43 S.Ct. 338, 341, 67 L.Ed. 616." Kishan Singh v. Carr, 9 Cir., 88 F.2d 672, 674. If the alien entered the United States illegally prior to July 1, 1924, he could not be deported if more than 5 years had elapsed between the date of entry and apprehension, while if he entered subsequently to July 1, 1924, he may be deported at any time. See 8 U.S.C.A. § 155; 8 U.S.C.A. § 214; Ohara v. Berkshire, 9 Cir., 76 F.2d 204, 206; Bhagat Singh v. McGrath, 9 Cir., 104 F.2d 122. Regardless of the date of original entry, however, the governing date is that of the alien's last entry into the United States, no matter for what purpose the alien may have left the country and returned. Suwa v. Carr, 9 Cir., 88 F.2d 119. It follows, therefore, if the alien was actually in Mexico in September, 1928, or at any time subsequently to July 1, 1924, regardless of purpose or length of visit, the date of his original entry into the United States prior to that time is unimportant. Thaman Singh v. Haff, 9 Cir., 83 F.2d 679.

■ The appellant had the burden of proving to the immigration authorities his right to remain in the United States. 8 U.S.C.A. § 221; Uyemura v. Carr, 9 Cir., 99 F.2d 729, 730; Bhagat Singh v. McGrath, supra. None of the evidence presented by him was of such quality that it must be held conclusive. He testified in his own behalf, but his papers had been "burned" prior to the first hearing; Mr. Phelps had destroyed his time cards and records by burning; Roshen Ali's records had also been burned; Nur Mohammed had no written evidence to produce; the affidavits from India bore unmistakable signs of alteration; one possible witness at the second hearing was said to be dead, and another had returned to India; and no explanation was offered as to how the alien came to be in possession of the four checks.

The Mexican photograph, to which appellant's counsel directs his heaviest attack, is not so dim, out of focus, blurred, or unlike the acknowledgedly true photographs of appellant that we are required to hold, as a matter of law, the action of the immigration authorities arbitrary or caprici-

ous. In fact, viewed under a magnifying glass, there is a striking resemblance. It is significant that the true photographs quite clearly exhibit a scar near the inner end of the left eyebrow, while the magnifying glass reveals, almost as clearly, a nearly identical scar at the same spot in the Mexican photograph.

The two photographers produced by the alien, who testified in his behalf, and the identification experts who testified for the immigration authorities on the comparison of the alien or the acknowledgedly true photographs, or both, with the Mexican photograph, created a simple conflict, which, resolved by the Board, we are without right to re-examine.

The action of the examining officer in declining to further continue the hearings in order to permit the alien to produce other photographers to testify that there was no resemblance between the Mexican photograph and the alien or true photographs, did not render the proceeding unfair, particularly as the testimony would be merely cumulative.

Order affirmed.