### UNITED STATES v. GANCY.
#### Cr. No. 7547.

District Court, D. Minnesota,
Fourth Division.
March 29, 1944.

756

Braulio M. Gancy, pro se.

Victor E. Anderson, U. S. Atty., and John W. Graff, Asst. U. S. Atty., both of St. Paul, Minn., for the United States.

NORDBYE, District Judge.

The defendant was indicted for failure to register between August 27, 1940, and December 26, 1940, as required by the Alien Registration Act of 1940 and the regulations promulgated thereunder. He was born on March 26, 1900, in the Province of Cavite, Philippine Islands. He has never been naturalized. He contends that, as a citizen of the Philippine Islands, he became a citizen of the United States by virtue of the Treaty of Paris, signed December 10, 1898, and ratified by the United States on April 11, 1899, and therefore is not required to register under the Alien Registration Act of 1940. In contending that he is a citizen of the United States by reason of the Treaty of Paris, he clearly errs. In Article IX of that Treaty, it is stated that: "The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress." Congress has never conferred citizenship upon the inhabitants of the Philippine Islands. No legislation has ever

been passed by Congress which assumes to incorporate the Philippine Islands as a territory of the United States. Indeed, the relationship as between the United States and the inhabitants of the Philippine Islands has always been quite unique and somewhat anomalous. For a discussion thereof, see Volume 42, Harvard Law Review 809. And while Filipinos are apparently entitled to certain rights and privileges of American nationals, no congressional legislation applies to the inhabitants of the Philippines in absence of express provision to that effect. Residence in the Philippines is not residence in the United States for naturalization purposes. It is significant to note that, as the term "United States" is used in the Alien Registration Act of 1940, it includes the States and the territories of Alaska and Hawaii, District of Columbia, Puerto Rico and the Virgin Islands, but it does not include the Philippine Islands. As stated in People v. Cordero, 1942, 50 Cal.App.2d 146, 122 P.2d 648, 649:

"Notwithstanding the fact that the Governments of the United States and the Philippines have amiably collaborated for the improvement of the economy, for the increase of liberty and for the upbuilding of the civilization of the islands, yet the Philippine Islands have never been incorporated into the United States. They constitute merely an insular possession appurtenant to the United States. By the Treaty of Paris in 1898, 30 Stat. 1754 the civil and political status of the Filipinos was to be determined by Congress. 42 Harvard Law Review, 809. No act of that body has ever conferred citizenship upon them. Ibid. The islands are a dependency until admitted into the union or until this government surrenders its jurisdiction over that territory."

In fact, until after the turn of the present century, when certain legislation was passed by Congress granting special privileges to those who had served in our armed forces, and who might apply for naturalization, a Filipino was not even eligible for citizenship; that is, he was not a free white person or a person of African nativity, as the naturalization statutes then required. In discussing this question, our Supreme Court in Toyota v. United States, 268 U.S. 402, 410, 45 S.Ct. 563, 565, 69 L. Ed. 1016, stated:

"When the Act of 1918 was passed, it was doubtful whether section 30 of the Act of 1906 * * * extended the privilege of naturalization to all citizens of the Philippine Islands. They were held eligible for naturalization in Re Bautista, D.C., 245 F. 765, and in Re Mallari, D.C., 239 F. 416. And see 27 Op.Attys.Gen. 12. They were held not eligible in Re Alverto, D.C., 198 F. 688, and in Re Lampitoe, D.C., 232 F. 382, and in Re Rallos, D.C., 241 F. 686. But we hold that until the passage of that act, Filipinos not being 'free white persons' or 'of African nativity' were not eligible, and that the effect of the Act of 1918 was to make eligible, and to authorize the naturalization of, native-born Filipinos of whatever color or race having the qualifications specified in the seventh subdivision of section 4."

The seventh subdivision of Section 4 of the Act of 1918, 40 Stat. 542, permitted the naturalization of any native-born Filipino who had served in the armed forces of the United States for a certain number of years. Unless, therefore, a native-born Filipino brought himself within the provisions of the Act referred to in the Toyota case, he could not become a citizen of this country. His status by reason of the cession of the Philippine Islands by Spain under the Treaty of Paris was considered by John W. Briggs, Attorney General of the United States, who, on January 23, 1901, gave the following opinion:

"The undisputed attitude of the executive and legislative departments of the Government has been and is that the native inhabitants of Porto Rico and the Philippine Islands did not become citizens of the United States by virtue of the cession of the islands by Spain by means of the treaty of Paris. It was not the intention of the commissioners who negotiated the treaty to give those inhabitants the status of citizens of the United States." 23 Op. Atty.Gen. 370.

But it may be urged that, even though the defendant is not a citizen of the United States, he is not an alien and therefore should not be required to register under the Alien Registration Act of 1940. It has been frequently stated that a Filipino owes allegiance to no foreign government. Under the Immigration Act of March 3, 1891, 26 Stat. 1084, it was held that Filipinos were not aliens. See Gonzales v. Williams, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317. And as the term "alien" was used in the later immigration laws, 39 Stat. 874, 897 (1917), 8 U.S.C.A. § 173, it was specifically pro-

vided that the term "alien" "shall not be held to include citizens of the islands under the jurisdiction of the United States." However, under date of March 24, 1934, Congress provided for the complete independence of the Philippine Islands. 48 U.S.C.A. § 1232 et sequa. For immigration purposes under that Act, the Philippine Islands are now decreed to be a separate country and its inhabitants are deemed to be citizens of the Philippine Islands and its people "shall be considered as if they were aliens." 48 U.S.C.A. §§ 1002, 1238. Section 1238(a) (1) of this Act provides in part as follows:

"For the purposes of chapter 6 of Title 8 (except section 213(c)), this section, and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens. For such purposes the Philippine Islands shall be considered as a separate country and shall have for each fiscal year a quota of fifty."

The exceptions noted in the portion quoted are not pertinent to the discussion herein.

■ The Alien Registration Act of 1940 does not define an alien, though the regulations promulgated by the Commissioner of Immigration and Naturalization, with the approval of the Attorney General, under the title "Who are Aliens required to Register and be Fingerprinted," in Section 29.2, defines an alien as follows: "An alien, as the term is used in this part, includes any person not a citizen of the United States." This definition was evidently issued under Section 37(a) of the Act which permits the Commissioner, with the approval of the Attorney General, "to make and prescribe, and from time to time to change and amend, such rules and regulations not in conflict with this Act as he may deem necessary and proper in the aid of the administration and enforcement of this title (including provisions for the identification of aliens registered under this title)." Obviously, therefore, under the regulations, and assuming that such regulations are fairly within the scope of the authority granted by Congress, the defendant is subject to the provisions of the Act in that he is not a citizen of the United States. In addition, however, and even in absence of such regulations, defendant's motion herein cannot be sustained. It may

be observed that the Alien Registration Act is divided into four titles. Title IV, 8 U.S.C.A. § 451 note, merely pertains to the validity and the citation of the Act. Title I, 18 U.S.C.A. §§ 9–13, prohibits certain subversive activities. Title II, 8 U.S.C.A. §§ 137, 155, 155 note, 156a, 156a note, amends certain provisions of the law with respect to the admission and deportation of aliens, and Title III, 8 U.S.C.A. §§ 451–460, requires the fingerprinting and registration of aliens. Section 30 of Title III of the Act reads:

"Sec. 30. No visa shall hereafter be issued to any alien seeking to enter the United States unless said alien has been registered and fingerprinted in duplicate. * * *

"Any alien seeking to enter the United States who does not present a visa (except in emergency cases defined by the Secretary of State), a reentry permit, or a border-crossing identification card shall be excluded from admission to the United States."

■ In light of the recent changes in the status of the Filipino for immigration purposes, it seems clear that, as used in Section 30 of Title III of the Alien Registration Act of 1940, it was intended that the term "alien" should apply to a Filipino not a citizen of the United States seeking entry into the United States. There are, however, certain exceptions which may be referred to in order to avoid confusion. First, in view of the provisions of the Philippine Independence Act, the term "alien" for immigration purposes would not apply to a Filipino "coming or seeking to come to the Territory of Hawaii who does not apply for and secure an immigration or passport visa, but such immigration shall be determined by the Department of the Interior on the basis of the needs of industries in the Territory of Hawaii." 48 U.S.C.A. § 1238(a) (1). Moreover, the term "alien" would not apply to a Filipino lawfully admitted to the Territory of Hawaii if such Filipino sought entry from Hawaii into the United States, in that under such circumstances he would be merely traveling from one part of the United States to another part. 48 U.S.C.A. § 1238 (a) (2). But, as to all other entries into the United States by Filipino immigrants and who do not come within any of the other exceptions referred to in Section 1238(a) (2), it seems clear that the term "alien" applies.

There is no good reason to assume that, in light of the Philippine Independence Act, Congress did not intend that Section 31(a) of Title III of the Alien Registration Act of 1940 should not likewise apply to a Filipino who resides in the United States and who is not a citizen. This section reads, in part:

"It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 30, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days."

 The Alien Registration Act is a regulatory measure seeking to prevent subversive activities and to tighten the provisions of the law with reference to the admission and deportation of aliens. As an aid to that general purpose and object, the registration and fingerprinting of all aliens was deemed necessary. No one questions the loyalty of the Filipinos to the United States, which fact was so courageously demonstrated in the tragic days of December, 1941, and the early part of 1942, but friendly aliens, as well as enemy aliens, are all amenable to the Alien Registration Act. The purposes of the Act are to safeguard the security of the Union in times of great stress, and its provisions should be construed liberally so as to accomplish the objects envisaged by Congress. The Act is primarily addressed to the problem of immigration and the supervision and exclusion of aliens. Whatever rights the Philippine Islands may yet enjoy by reason of their present relationship to the United States, and whatever status the Filipino may have with respect to other situations, it seems quite evident that, in so far as the Alien Registration Act is concerned, the Filipino non-citizen residing in the United States must be considered as an alien. Gonzales v. Williams, supra, therefore, is not in point. Its teachings have been superseded by subsequent immigration laws affecting the Filipino and wherein the Filipino is specifically designated as an alien. Congress undoubtedly could alter the immigration and naturalization status of the Filipinos abroad and those residing here who had not become citizens. We are only concerned herein with the duties and obligations under the Alien Registration Act of the non-citizen Filipinos residing in the United States. The cases cited by the defendant, among others—Fourteen Diamond Rings v. United States, 183 U.S. 176, 22 S.Ct. 59, 46 L.Ed. 138; Balzac v. Porto Rico, 258 U.S. 298, 42 L.Ed. 343, 66 L.Ed. 627; De Lima v. Bidwell, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041; Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088—are not particularly helpful to the sole issue presented herein. We may, as these cases suggest, owe the Filipinos a duty of protection in return for their allegiance and they may be entitled to certain fundamental personal rights as nationals of a dependency, but their rights under our immigration laws are a matter for Congress to determine. That question has now been settled beyond any controversy.

It follows, therefore, that the motion to quash the indictment will be, and is, denied. An exception is reserved to the defendant.