## GANCY v. UNITED STATES.
### No. 12873.

Circuit Court of Appeals, Eighth Circuit.

June 7, 1945.

---

B. M. Gancy, pro se.

John W. Graff, Asst. U. S. Atty., of St. Paul, Minn. (Victor E. Anderson, U. S. Atty., of St. Paul, Minn., on the brief), for appellee.

Before STONE, GARDNER, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

Appellant was convicted under an indictment charging him with failure to register between August 27, 1940, and December 26, 1940, as required by the Alien Registration Act of 1940, 8 U.S.C.A. §§ 137, 155, 156a, 451–460, 18 U.S.C.A. §§ 9–13, and the regulations promulgated thereunder, and he appeals. He was born in the Philippine Islands on March 26, 1900, and was residing in the United States during the entire year 1940 and for some time prior and subsequent thereto. He has never been naturalized as a citizen of the United States and he has never registered as an alien under the Alien Registration Act of 1940.

The sole question presented on this appeal is whether a native-born Filipino living in the United States and not having become a naturalized citizen of the United States was required to register as an alien under the Alien Registration Act of 1940 and the regulations promulgated thereunder. There are no disputed questions of fact. Section 31(a) of Title III of the Alien Registration Act of 1940, 8 U.S.C.A. § 452(a), reads in part as follows: "It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 30, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days."

It is contended by appellant that on the ratification of the treaty with Spain, the Philippine Archipelago was ceded to the United States and ceased to be a foreign country within the meaning of the Constitution, and hence, a native of the Philippines is not an alien within the meaning of the Alien Registration Act of 1940; that a Filipino owes allegiance to no country other than the United States, but is a "subject" or a "national" of the United States, and that being a subject of the United States is tantamount to being a citizen of the United States.

The Treaty of Paris, by which the Philippine Islands were ceded to the United States, was ratified April 11, 1899, 30 Stat. 1754. Article IX of that treaty provides in part as follows: "The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress."

Manifestly, the natives of the Philippine Islands did not become citizens of the United States by virtue of the Treaty of Paris, and unless Congress, which has the sole power to provide for naturalization, has conferred citizenship upon them, it would seem clear that they must still be

aliens whatever other rights or privileges as American nationals they may enjoy. The Registration Act of 1940 specifically mentions the territories of Alaska, Hawaii, District of Columbia, Porto Rico and Virgin Islands as being included as part of the United States, but it does not include the Philippine Islands. They constitute an insular possession of the United States. No Act of Congress has been cited conferring citizenship upon the native Filipinos. The Islands have never been admitted into the Union, and Filipinos were not eligible for naturalization until the Act of 1918, 40 Stat. 542, which extended the privilege of naturalization only to native-born Filipinos having the qualifications specified in the seventh subdivision of section 4. Toyota v. United States, 268 U.S. 402, 45 S.Ct. 563, 69 L.Ed. 1016.

■ It is further contended by appellant that even though he may not be a citizen of the United States, he is not an alien within the meaning of the Alien Registration Act. Whether a Filipino is an alien as that term is used in other acts of Congress, is not controlling.

Following the Treaty of Paris, Congress passed the Act of July 1, 1902, 32 Stat. 691. In that Act the civil status of the inhabitants was determined. Section 4 of the Act reads in part as follows: "Sec. 4. That all inhabitants of the Philippine Islands continuing to reside therein who were Spanish subjects on the eleventh day of April, eighteen hundred and ninety-nine, and then resided in said Islands, and their children born subsequent thereto, shall be deemed and held to be citizens of the Philippine Islands and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain in accordance with the provisions of the treaty of peace between the United States and Spain * * *."

This section was amended in 1912, and there was added a provision that the Philippine legislature was authorized to provide by law for the acquisition of Philippine citizenship by those natives of the Philippine Islands who did not come within the provisions of the Act, the natives of other insular possessions of the United States, and such other persons residing in the Philippine Islands who could become citizens of the United States under the laws of the United States if residing therein. It will thus be observed that there were at least two classes of inhabitants recognized by the Act of 1902. One class were declared to be citizens of the Philippine Islands and as such were entitled to the protection of the United States, but the other class included those who preserved their allegiance to the Crown of Spain and these were not accorded the protection of the United States.

Under the Congressional Act of March 24, 1934, 48 Stat. 462, which provided for the independence of the Philippine Islands, it was provided that for immigration purposes the Philippine Islands should be considered a separate country and its inhabitants deemed to be citizens of the Philippine Islands, and its people "shall be considered as if they were aliens." 48 U.S. C.A. 1002, 1238 and 1238 (a) (1). The last-cited section provides in part as follows: "For the purposes of chapter 6 of Title 8 (except section 213(c) ), this section, and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens. For such purposes the Philippine Islands shall be considered as a separate country and shall have for each fiscal year a quota of fifty."

The congressional legislation on the subject negatives, we think, any intention on the part of Congress to confer citizenship on the inhabitants of the Philippine Islands. People v. Cordero, 50 Cal.App.2d 146, 122 P.2d 648.

While the Alien Registration Act of 1940 does not define the term "alien", the regulations promulgated thereunder specifically provide that, "An alien, as the term is used in this part, includes any person not a citizen of the United States." This regulation was authorized by Section 37(a) of the Act, 8 U.S.C.A. § 458(a), permitting the Commissioner of Immigration and Naturalization, with the approval of the Attorney General, "to make and prescribe, and from time to time to change and amend, such rules and regulations not in conflict with this Act as he may deem necessary and proper in the aid of the administration and enforcement of this title."

The status of a native Filipino was considered by the District Court of California in In re Bautista, D.C., 245 F. 765, 771. In the course of the opinion in that case, Cir-

-cuit Judge Morrow, in referring to an applicant for citizenship, among other things said:

"He was born an alien, and until now he has taken no step to change his status. It is true his status was changed by the Treaty of Paris when his allegiance to the Spanish Crown was dissolved, and again when the Act of July 1, 1902, providing temporarily for the administration of the affairs of the civil government of the Philippine Islands, made him a citizen of the Philippine Islands. But now, if otherwise qualified, he may himself take the further step and become a citizen of the United States under section 30 of the Act of June 29, 1906; and this is made possible by the provision enacted expressly for the benefit of those inhabitants of Porto Rico and the Philippine Islands whose allegiance to the Crown of Spain has been dissolved by the Treaty of Paris and their permanent allegiance transferred to the United States, and because of that status are not now required to renounce allegiance to any foreign sovereignty.

"Who are aliens under the naturalization laws of the United States has not been definitely defined by the Supreme Court of the United States. But in Low Wah Suey v. Backus, 225 U.S. 460, 473, 32 S.Ct. 734, 737, 56 L.Ed. 1165, that court, in construing the alien immigration act of February 20, 1907 (chapter 1134, 34 Stat. 898), adopted the definition given in 2 Kent, 50; 1 Bouvier's Law Dic. 129. 'An alien has been defined,' says the court, 'to be "one born out of the jurisdiction of the United States, and who has not been naturalized under their Constitution and laws." ' This definition is also found in Webster's Dictionary; Century Dictionary; Black's Law Dictionary; 2 Cyc. 85; 2 Corpus Juris, 1043 * * *."

 Under the Act the duty to register was imposed upon all non-citizens whether they were friends or enemies, and hence, no stigma attaches to the requirement. This was a war measure passed as a safeguard in a time of national stress and should be so construed as to accomplish the purpose of Congress in enacting it. We agree with the trial court (United States v. Gancy, D.C., 54 F.Supp. 755) that appellant, under the Alien Registration Act of 1940, was required to register as an alien, and the judgment appealed from is therefore affirmed.