**DEL GUERCIO, District Director Immigration and Naturalization Service,**
**v. GABOT.**

**No. 11433.**

Circuit Court of Appeals, Ninth Circuit.

May 13, 1947.

James M. Carter, U. S. Atty., Ronald Walker and Robert Wright, Asst. U. S. Atty., all of Los Angeles, Cal. (Bruce G. Barber, Chief, Adjudication Division, Immigration and Nat. Service, of Los Angeles, Cal., of counsel), for appellant.

L. A. Gordon and Harry Wolpin, both of Los Angeles, Cal., for appellee.

Before STEPHENS, HEALY, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The petitioner, Sebastian Gabot, was about to be deported, when he sought release from the District Director of Immigration by petition for the writ of habeas corpus. The court granted the writ, and ordered the release as prayed. The Director appeals.

Gabot, a native of the Philippine Islands, legally entered the Territory of Hawaii, at Honolulu, September 9, 1927, and remained there until he left for Continental United States, arriving in San Francisco, California, July 11, 1929. He remained continuously in Continental United States until March 20, 1934, on which date he crossed the United States-Mexico border, got married, and four hours later re-crossed the border into the United States. He never became a citizen of the United States.

Section 155(a) of Title 8, U.S.C.A., provides: "* * * except as hereinafter provided, any alien * * *, after May 1, 1917, [who] is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States * * *" shall be deported.[1]

---

[1] On June 8, 1934, the following regulation was propounded by the Immigration and Naturalization Service: "All citizens of the Philippine Islands shall be subject to deportation and may be deported in the same manner as aliens,

On January 28, 1935, petitioner was found guilty of second degree murder for the killing of a man on October 11, 1934, a crime of moral turpitude. The crime was committed since May 1, 1917, and, therefore, falls within the time scope of the section just quoted. On November 8, 1935, the government, considering Gabot "as if he were an alien," according to its understanding of the phrase, and after appropriate proceedings, directed petitioner's deportation to the Philippine Islands. The significance of the quoted phrase will presently be shown.

The offense of which petitioner was convicted was committed more than five years after his first entry into the United States but within five years after his four-hour sojourn into Mexico on March 20, 1934.

Unless the Mexican excursion is in law his last entry into the United States, Gabot cannot be deported upon the basis of having committed the crime of which he was convicted, which was committed more than five years since his entry into this country. If, on the other hand, the coming back across the United States-Mexico line on March 20, 1934, constitutes "entry," then the crime would have been committed within five years of such entry, and petitioner's case would be within the deportation statute if the Director's understanding of the phrase "as if he were an alien" is the correct one.

Philippinos, residing in the United States during the period from the cession of the Philippine Islands to the United States and the establishment of Philippine independence, were of an uncertain status. They were not citizens of the United States, but because the United States exercised sovereignty over the Islands and their inhabitants, they are said to have been United States nationals and not aliens.[2] The Independence Act (48 U.S.C.A. § 1231), although it became a law of the United States in March, 1934, was by its terms not to be effective until the Philippine people accepted it. Formal acceptance became effective May 14, 1935.

In the Independence Act it is provided that "(1) For the purposes of Chapter 6 of Title 8 [except § 213c (not pertinent here)], this section, and all other laws of the United States, relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands, who are not citizens of the United States, *shall be considered as if they were aliens * * *.*" 48 U.S.C.A. § 1238. (Our emphasis.) It will be noticed that the statute did not classify the Philippino as an alien; it provided that he should be *considered as an alien* for the limited purposes of the statute. By unmistakable inference the Congress was acting upon the premise that the Philippino residing in the United States before Philippine independence was not an alien, and under the legislation in process he would,

---

with the following exceptions: (a) A citizen of the Philippine Islands, who has resided in the United States continuously since April 30, 1934, shall not be subject to deportation for any act of his that occurred * * * prior to May 1, 1934 * * *." Section 172.9(a), Title 8, Code of Fed. Reg.

Petitioner entered the United States the last time March 20, 1934, or before April 30, 1934. Therefore, he has resided in the United States "continuously since April 30, 1934," and would not be subject to deportation for any act prior to May 1, 1934. But the act of killing occurred October 11, 1934, or since May 1, 1934. This regulation, therefore, does not change the situation.

2 Status of Philippinos subsequent to the Treaty of Paris, April 11, 1899, and prior to Philippine independence: In Hidemitsu Toyota v. United States, 268 U.S. 402, 411, 45 S.Ct. 563, 69 L.Ed. 1016, it was held that citizens of the Philippine Islands are not aliens. However, in Gancy v. United States, 8 Cir., 149 F.2d 788, 791, the court was of the opinion that a Philippino is an alien within the meaning of Alien Registration Act, suggesting that he might not be an alien as that term is used in other acts of Congress, which did not control therein. The Registration Act was a war measure imposed on all non-citizens, and the court stated that "appellant, under the Alien Registration Act of 1940, was required to register as an alien * * *." Good summations of the law in regard to the status of the Philippino in the United States during the period delineated in the opinion text may be found in People v. Cordero, 50 Cal.App.2d 146, 122 P.2d 648, and Alfafara v. Fross, 26 Cal.2d 358, 159 P.2d 14. The United States Supreme Court's decisions on the subject are cited and applied in the latter case.

insofar as such legislation was effective, not be declared to be an alien.

It would seem that, in the absence of any other statute or treaty, the Philippino non-United States-citizen-resident would occupy the status of an alien only upon his native land becoming an independent nation. We do not, however, reach that point. It is sufficient to say that the situation was not too clear, and that it was thought desirable to enact the statute referred to in order to clarify the "immigration" situation.

The attempted clarification, however, left much to be desired as the contentions in this case indicate. The Director's construction of the statute containing the phrase "shall be considered as if they were aliens" is that from its effective date whenever any Philippino not a citizen of the United States stands before the immigration officials under a charge that he should be deported, his case must be considered as though he had been an alien during his entire stay in the United States. The trial judge thought differently. He reasoned that any change in the Philippino's status was effective from the effective date of the statute, and that it was not intended to be effective retroactively, and that when Gabot came across the line in March, 1934, he was not an alien, and, therefore, the "turpitude" statute was not applicable.

We agree with the trial judge. The law does not favor the retroactive application of statutes. Ex post facto application of criminal law is prohibited by the United States Constitution.[3] Of course, the issue here is not concerned with the subject of ex post facto law, yet it approaches it in principle, for if the Director is right, the appellee is to be forceably deported only by the retrospective application of a law which has constituted a perfectly legal act, when done, a necessary element for the deportation.

In the appeal of the case of Di Pasquale v. Karnuth, 2 Cir., 158 F.2d 878, a deportation case under the same statute, there is apt language. On page 879, it is said: "Caprice in the incidence of punishment is one of the indicia of tyranny, and nothing can be more disingenuous than to say that *deportation in these circumstances is not punishment*. It is well that we should be free to rid ourselves of those who abuse our hospitality; but it is more important that the continued enjoyment of that hospitality once granted, shall not be subject to meaningless and irrational hazards." (Emphasis added.) In the instant case there is more than hospitality; Gabot was a national of the United States. (We do not cite the Di Pasquale case upon any other expression in the opinion.)

In summation we hold, as did the trial judge, that Gabot was not an alien when he crossed the international line in March, 1934, and that legally he could not be considered an alien at that time so as to bring the "turpitude" statute into play.

If the circumstances in this case were such as to justify the consideration of Gabot as an alien, we would hold the crossing from Mexico to the United States as an "entry." The case of Annello ex rel. Annello v. Ward, Com'r., D.C., 8 F.Supp. 797, which is not in accord with our holding, is relied upon by Gabot. In that case the alien went across the line and came back within the hour, and the court thought such act was not an "entry". In principle the point in the cited case may be considered the same as the point made in our case. However, we think the ruling in the cited case is not in accord with the authorities. Without discussing them we cite cases: Lapina v. Williams, 232 U.S. 78, 34 S.Ct. 196, 58 L.Ed. 515; Lewis v. Frick, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967; and Ali v. Haff, 9 Cir., 114 F.2d 369. See the California Appellate and California Supreme Court decisions heretofore cited in Note 2 with their collection of authority.[4]

We find no error.

Affirmed.

---

[3] "No Bill of Attainder or ex post facto Law shall be passed." Art. 1, Sec. 9, Clause 3, Constitution of the United States.

[4] We also note a seeming conflict between the cases, Di Pasquale v. Karnuth, 2 Cir., 158 F.2d 878, and Del Guercio v. Delgadillo, 9 Cir., 159 F.2d 130, as to whether or not a reentry after an involuntary or an unintentional and temporary departure from this country constitutes an alien's last entry under the immigration laws. The point is not in this case.