**Debbie and Doreen SORIA, by their father and next friend Roberto L. Soria, et al., Plaintiffs-Appellees,**

v.

**OXNARD SCHOOL DISTRICT BOARD OF TRUSTEES et al., Defendants-Appellants.**

**Nos. 71-2369, 71-2929.**

United States Court of Appeals, Ninth Circuit.

Aug. 21, 1972.

Edwin M. Osborne, County Counsel, Ronald W. Sabo and William A. Waters, Asst. County Counsels, Ventura, Cal., for defendants-appellants.

John A. Childers, Thomas E. Malley, Oxnard, Cal., Peter D. Roos, Los Angeles, Cal., for plaintiffs-appellees.

David L. Norman, Asst. Atty. Gen., Washington, D. C., intervenor for United States.

Before CHAMBERS, MERRILL and CHOY, Circuit Judges.

PER CURIAM:

On July 21, 1971, the District Court approved a plan for desegregation of schools in the Oxnard, California, School District and ordered appellant school board to implement the plan. The plan entailed transfer and transportation of students and has now been in operation for the 1971–72 school year.

On August 11, 1971, the defendants noticed an appeal from the July 21, 1971, order of the District Court. This court, on December 29, 1971, denied defendants' application for a stay pending appeal.

On July 1, 1972, the Education Amendments of 1972 became effective. P.L. 92–318, 86 Stat. 235. On June 29, 1972, the school district petitioned this court for reconsideration or clarification of our order denying stay in light of § 803 of that Act.[1] It is this petition that is now before us.

■ We decline to reconsider our denial of stay. As we construe § 803 it has no application to a case pending at the time of its effective date in which transportation of students pursuant to integration plan, is already in operation.

■ We begin with the general principle that a statute is presumed to apply only prospectively except where Congress has clearly and unambiguously indicated that the statute is retroactive.[2] Accordingly, our initial assessment of § 803 is that it does not serve to roll back desegregation orders already in effect.

In our view the language of § 803 in no way indicates retroactivity in the degree sought here—i.e., suspension of implemented orders. Rather, that "the effectiveness of such order shall be postponed" suggests a delay or deferment of something that is yet to take place. We think the sense conveyed is that of a continuation of the status quo, not a disruption of it. Certainly, language was available which could have made clear that the provision would achieve a suspension or alteration of the existing order. In any event, we are not persuaded that Congress has spoken with sufficient clarity to cause us to vary our normal construction.

We turn, therefore, to the legislative history. The prime source of information in this case is a conference report. However, the only relevant comment on § 803 to which we are referred is of little assistance:

"This section does not authorize the reopening of final orders, however, appealable orders are considered to be within the scope of this amendment." Sen.Conf.Rep. No. 92–798, 92d Cong., 2d Sess. (1972), appearing in 1972 U. S. Code Cong. & Admin. News, at p. 2408.

---

1. § 803 provides:

"Notwithstanding any other law or provision of law, in the case of any order on the part of any United States district court which requires the transfer or transportation of any student or students from any school attendance area prescribed by competent State or local authority for the purposes of achieving a balance among students with respect to race, sex, religion, or socioeconomic status, the effectiveness of such order shall be postponed until all appeals in connection with such order have been exhausted or, in the event no appeals are taken, until the time for such appeals has expired. This section shall expire at midnight on January 1, 1974."

2. See Union Pacific R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 58 L.Ed. 179 (1913); United States v. St. Louis, S.F. & Texas Ry. Co., 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435 (1926); Bruner v. United States, 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 96 L.Ed. 786 (1952); Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); United States v. Perry, 431 F.2d 1020, 1023 (9th Cir. 1970); Del Guercio v. Gabot, 161 F.2d 559, 561 (9th Cir. 1947).

This statement does not indicate a clear intent to suspend orders which are already implemented. While it may suggest that § 803 is to delay from taking effect even those unimplemented orders which were pending at time of enactment, such a view would not be inconsistent with our construction in this decision.

Our attention is consequently directed to congressional floor debate. We recognize that statements were made in that discussion which would suggest that § 803 would apply to orders that have already been implemented.[3] However, one can also point to remarks in the debate which seem to emphasize a preservation of the status quo, as opposed to putting an order into effect, until the hotly disputed issue of the power of federal courts to compel transportation and transfer of students can be authoritatively settled.[4] Moreover, other legislators may well have viewed the provision as having only limited or no retroactivity.[5]

In sum, one legislator may have described the situation most aptly when she said, while feeling that § 803 would apply in such cases as this one, that "the record is clouded." [6] In any event, this dispute points up the difficulty of attempting authoritatively to construe an at-best ambiguous statute on the basis of floor debates involving individual congressmen.[7] *Cf.* United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L. Ed.2d 488 (1971).

We conclude that § 803 does not clearly operate retroactively to the extent of suspending an implemented transportation order (under which transportation of students pursuant to plan is already in operation), and therefore we do not so construe it contrary to normal construction and to our understanding of the language.

Application denied.

---

3. *See* 118 Cong.Rec. H1853 (daily ed.) (March 8, 1972) (Rep. Broomfield; *id.* S8286 (May 23, 1972) (Sen. Pell); *id.* S8397 (May 24, 1972) (Sen. Dominick).

4. *See* 118 Cong.Rec. S8289 (daily ed.) (May 23, 1972) (Sen. Dominick); *id.* S8378 (May 24, 1972) (Sen. Pell); *id.* S8393 (Sen. Javits); *id,* S8396 (Sen. Dominick); *id.* H1852 (March 8, 1972) (Rep. Broomfield); *id.* H5406 (June 8, 1972) (Rep. W. Ford); *id.* H5417–18 (Rep. G. Ford, Rep. Pucinski); *id.* H5418 (Rep. Esch); *id.* H5419 (Rep. Broomfield); *id.* H5420 (Rep. McCulloch).

5. *See* 118 Cong.Rec. S8393 (daily ed.) (May 24, 1972) (Sen. Javits). *See also id.* S8286–87 (May 23, 1972) (Sen. Javits).

6. 118 Cong.Rec. H5401 (daily ed.) (June 8, 1972) (Rep. Green).

7. The problems in this respect are heightened by the fact that § 803 was just one portion of a large and significant piece of education legislation. Thus, there is not reason as there might be in some cases to regard passage of the Act as a clear legislative verdict in favor of one particular view on a single issue.