MATTER OF HERMOSA

In Deportation Proceedings

A-14839916

*Decided by Board September 28, 1973*

The Philippine Islands have never been deemed part of the United States within the purview of the citizenship clause of the Fourteenth Amendment of the Constitution of the United States; hence, respondent's claim to United States citizenship under the provisions of section 1 of the Immigration Act of February 5, 1917, as amended, and the Fourteenth Amendment to the Constitution by virtue of her birth in the Philippine Islands on March 27, 1943, is without merit.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer.

ON BEHALF OF RESPONDENT: William H. Oltarsh, Esquire
225 Broadway
New York, New York 10007

The respondent, who was born in the Philippines on March 27, 1943, entered the United States in December of 1966 as a nonimmigrant student. She remained longer than authorized and as a result deportation proceedings were commenced. The respondent's basic contention during these proceedings had been that, although a citizen of the Philippines, she is also a national of the United States. This contention was rejected by the immigration judge and his ruling was affirmed on appeal by this Board. The respondent now moves for reopening and reconsideration of her case on the basis of a claim to United States *citizenship*. The motion will be denied.

In 1899 the United States acquired the Philippine Islands from Spain under the Treaty of Paris.[1] That document granted Congress the power to determine "[t]he civil rights and political status of the native inhabitants. . . ."of the Islands.[2] Commencing in 1902,

---

[1]Treaty of Peace Between the United States and Spain, 30 Stat. 1754 (1899).
[2]*Id.*, Article IX, 30 Stat. at 1759.

447

Congress exercised this power through a series of acts which conferred Philippine, but not United States, citizenship on the peoples of the Islands. See Act of July 1, 1902, 32 Stat. 691; Act of March 23, 1912, 37 Stat. 76; Act of August 29, 1916, 39 Stat. 546.

Several decades later, Congress provided for the eventual independence of this possession. The Philippine Independence Act,[3] effective May 1, 1934,[4] stated that "citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens" for purposes of immigration, exclusion and expulsion under the Immigration Acts of 1917 and 1924. Section 8(a), Philippine Independence Act, footnote 3, *supra*. This legislation also provided that full independence would be granted to the Islands approximately ten years after the inauguration of a new constitutional government in the Philippines. However, the Presidential Proclamation establishing independence was delayed by World War II until July 4, 1946. Presidential Proclamation No. 2695, 3 CFR p. 86 (1943–48 Comp.). In the interim, which covers the respondent's date of birth, Filipinos retained their United States nationality, yet were deemed aliens for the above described purposes. See *Matter of Peralta*, 11 I. & N. Dec. 321, 322–23 (BIA 1965). Upon complete independence, those Filipinos who were not United States citizens became aliens for all purposes, thus losing every aspect of their United States nationality. Section 14, Philippine Independence Act, footnote 3, *supra; Rabang v. Boyd*, 353 U.S. 427 (1957).

Nevertheless, the respondent contends that she is both a Filipino *and* a citizen of the United States by virtue of her birth in the Philippines. She maintains that the Islands were deemed part of the United States for purposes of the citizenship clause of the Fourteenth Amendment. While this claim is squarely in conflict with the clear thrust of the foregoing enactments, its resolution will require examination of provisions dealing specifically with citizenship and nationality.

The Fourteenth Amendment specifies that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, . . . ." This language of the Constitution is quite similar to some earlier legislation;[5] nevertheless, neither the initial statute nor the constitutional provision attempted to define the term "United States."

In 1940 Congress passed the first comprehensive legislation dealing with nationality and citizenship at birth. Section 101(d) of

---

[3] Act of March 24, 1934, 48 Stat. 456.

[4] *Matter of V—*, 7 I. & N. Dec. 242 (BIA, 1956).

[5] Section 1992, Revised Statutes, Act of April 9, 1866, 14 Stat. 27.

the Nationality Act of 1940,[6] applicable at respondent's birth, stated: "The term 'United States' when used in a geographical sense means the continental United States, Alaska, Hawaii, Puerto Rico, and the Virgin Islands of the United States." From this provision, and section 201(a) of the 1940 Act which substantially reiterated the relevant portion of the Fourteenth Amendment, it is clear that the respondent did not acquire United States citizenship by reason of her birth in the Philippines. Congress, over the course of several years, had determined that the Philippines would be an independent nation and their peoples treated as citizens of that nation and not as citizens of the United States.

The respondent, however, relies upon section 1 of the Immigration Act of 1917,[7] which provides in part:

> That the term "United States" as used in the title as well as in the various sections of this Act shall be construed to mean the United States, and any waters, territory, or other place subject to the jurisdiction thereof....

This seemingly broad language does not, in fact, support the respondent's claim to citizenship.

Initially it should be noted that Congress was limiting itself to matters of immigration and not nationality when it enacted this provision. Indeed, the definition itself confines its application to the 1917 Act, which dealt exclusively with matters of immigration. Moreover, as previously summarized, Congress on numerous occasions has specifically addressed itself to the question of Philippine citizenship; in each instance it declined to confer United States citizenship on Filipinos.

The decision in *United States* v. *Gancy*, 54 F. Supp. 755 (D. Minn. 1944), affirmed 149 F.2d 788 (C.A. 8), cert. denied 326 U.S. 727, rehearing denied 326 U.S. 810 (1945), which concerned a claim essentially similar to respondent's, supports our conclusion as well. While the provision of law relied upon by the respondent was not directly in issue there, the holding in that case is germane. The court held that an idividual born in the Philippines did not become a citizen of the United States by virtue of the Treaty of Paris,[8] and further remarked that "Congress has never conferred citizenship upon the inhabitants of the Philippine Islands." *United States* v. *Gancy*, 54 F. Supp. at 756.

It is thus abundantly evident that the Islands were never deemed part of the United States within the purview of the citizenship clause of the Fourteenth Amendment. See also *Matter*

---

[6] Act of October 14, 1940, 54 Stat. 1137.

[7] Act of February 5, 1917, 39 Stat. 874.

[8] See footnote 1, *supra.*

*of M—*, 6 I. & N. Dec. 182 (BIA 1954). The respondent's claim is without merit, and accordingly the motion will be denied.

**ORDER:** The motion is denied.